# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| API SIGNS, LLC, | ) | Case No. 14-12278 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | Hearing Date: May 7, 2014 at 9:30 a.m. |

## NOTICE OF MOTION

     PLEASE TAKE NOTICE that on **May 7, 2014 at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Janet S. Baer in the courtroom usually occupied by her, Courtroom 615, in the United States Bankruptcy Court, 219 South Dearborn, Chicago, Illinois 60604, or before any judge who may be sitting in her place or stead, and shall then and there present our **American Chartered Bank's Motion to Dismiss or Convert**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: May 2, 2014                                    **AMERICAN CHARTERED BANK**

                                                                       By: /s/ Jordan M. Litwin
                                                                             One of Its Attorneys

Jordan M. Litwin (ARDC No. 6287792)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{05665: 632: 01355366.DOC : }

# **CERTIFICATE OF SERVICE**

I, Jordan M. Litwin, an attorney, certify that on May 2, 2014, I caused copies of the attached **Notice of Motion** and **American Chartered Bank's Motion to Dismiss or Convert** to be served via electronic notice on the parties appearing in the Court's CM/ECF system as noted:

**REGISTRANTS SERVED VIA CM/ECF NOTICE**

- Julie E Crabbe    Jcrabbe@juliecrabbelaw.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Michael D. Lee    mlee@srcattorneys.com
- Jordan M Litwin    jlitwin@mpslaw.com, dnichols@mpslaw.com;mpslawllc@gmail.com
- Ben L Schneider    ben@windycitylawgroup.com, mstone@windycitylawgroup.com


By: /s/ Jordan M. Litwin

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| API SIGNS, LLC, | ) Case No. 14-12278 |
| | ) |
| Debtor. | ) Honorable Janet S. Baer |
| | ) |
| | ) Hearing Date: May 7, 2014 at 9:30 a.m. |

**AMERICAN CHARTERED BANK'S MOTION TO DISMISS OR CONVERT**

American Chartered Bank, an Illinois banking corporation ("American Chartered"), by its undersigned counsel, and pursuant to section 1112(b)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), respectfully moves the Court to convert or dismiss the above-captioned case of API Sign, LLC (the "Debtor"). In support of this motion (the "Motion"), American Chartered states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 1112(b) of the Bankruptcy Code.

**BACKGROUND**

*I.    Pre-Bankruptcy Filing*

2. The Debtor is a borrower under certain pre-petition loans from American Chartered. On August 31, 2010, the Debtor entered into a Promissory Note with American Chartered in the current outstanding principal amount of approximately $175,000, referenced by

{05665: 632: 01355366.DOC : }    1

American Chartered as loan number 608394301 (the "LOC").  Also on August 31, 2010, the Debtor entered into a Promissory Note with American Chartered in the current outstanding principal amount of approximately $312,000, referenced by American Chartered as loan number 608394302 (the "First Term Loan").  On July 11, 2011, the Debtor entered into a Promissory Note with American Chartered in the current outstanding principal amount of approximately $13,000, referenced by American Chartered as loan number 608394303 (the "Second Term Loan" and together with the LOC and the First Term Loan, the "Loans").[1]

3. In connection with the Loans, the Debtor granted to American Chartered a first priority blanket lien on the Debtor's assets, which is fully perfected.  The Loans are also evidenced and secured by certain loan agreements, guaranties, pledge agreements and related loan documents.  The Loans contain cross-default provisions.

4. The Debtor defaulted under the First Term Loan on or about June 1, 2013 as a result of a payment default, and further defaulted under the First Term Loan on or about October 1, 2013 and December 1, 2013.  The Debtor has also been in default under the LOC and the Second Term Loan since mid-2013 through, without limitation, cross-default provisions contained in the respective loan documents.

II.     *The Bankruptcy Filing*

5. The Debtor filed the above-captioned case on April 2, 2014 (the "Petition Date") for the purpose of halting American Chartered from further exercising its state law remedies against its collateral under the Loans.

6. The following day, on April 3, 2014, the Debtor filed an amended petition and on April 4, 2014 corrected certain further deficiencies in the petition.

---

[1] Each of the Loans are also sometimes referenced in the respective loan documents and payoff letters with the additional ending designation "-1".

7. On April 11, 2014, counsel for the Debtor contacted counsel for American Chartered for the first time to discuss consensual use of cash collateral. American Chartered, through counsel, indicated that in order to consider any such request, the bank required a proposed budget for the requested usage period and standard accounts receivable aging reports. To date, the Debtor has not provided the requested documents.

8. No motion for authority to use cash collateral or any motion has been filed by the Debtor in the 30 days since the Petition Date.

9. American Chartered has attempted to confirm with the Debtor that the Debtor has not engaged in the unauthorized use of cash collateral since the Petition Date but has been unable to verify the Debtor's compliance with section 363 of the Bankruptcy Code.

## LEGAL ANALYSIS & ARGUMENT

10. Section 1112(b)(1) of the Bankruptcy Code provides that:

> [e]xcept as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

11. Section 1112(b)(4) sets forth "cause" under section 1112 of the Bankruptcy Code. Nonetheless, courts have interpreted section 1112(b)(4)'s list to be non-exhaustive. *See*, *e.g.*, *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011) ("'[c]ause' is defined in § 1112(b)(4) with a list of examples, but that list is viewed as illustrative.") (*citing In re Borges,* 440 B.R. 551, 561 (Bankr. D.N.M. 2010)); *In re Strug-Div., LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007) (same). Further, courts in this Circuit have found that bankruptcy courts have broad discretion

{05665: 632: 01355366.DOC : }                                              3

under section 1112(b) of the Bankruptcy Code to dismiss a Chapter 11 case for cause. *Matter of Woodbrook Assoc.*, 19 F.3d 312, 316 (7th Cir. 1994).

12. Section 1112(b)(4)(A) of the Bankruptcy Code states as one specifically enumerated cause for conversion or dismissal, the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). With respect to the first prong, courts have found that substantial or continuing loss to or diminution of the estate is established where a debtor maintains a negative cash flow position. *Nester v. Gateway Access Solutions, Inc. (In re Gateway Solutions, Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) ("the Court looks to both the financial prospects of the Debtor and the financial records filed with the Court"); *In re Schriock Const. Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("[t]his element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief.") *In re Galvin,* 49 B.R. 665, 669 (Bankr. D.N.D. 1985) (finding that post-petition negative cash flow is considered by courts to be evidence of continuing losses).

13. In this case, the Debtor has repeatedly shown negative cash flow. The Debtor's 2012 year-end balance sheet provided to American Chartered represents that the Debtor has been insolvent for at least 18 months. More recently, the Debtor was in an <u>overdrawn position</u> on its accounts with American Chartered <u>virtually every day in 2013</u> – these being the Debtor's primary and only operating accounts. Representative statements from 2013 and 2014 attached hereto as **Exhibit A**, show that the Debtor concluded 2012 with approximately *negative* $6,500 and ended January 2013 in a worse position. This negative position continued in monthly reports for February, March and April. The peak of the Debtor's cash position occurred at the end of May 2013 at approximately $11,000 and then carried a negative or barely positive month-end

balance for the remainder of 2013 and 2014 until American Chartered converted the relevant accounts to a "closed" status. Further, the Debtor has failed to make required payments to American Chartered, its prepetition secured lender, for approximately 11 months, which ultimately led to American Chartered executing on an order of replevin against the Debtor's equipment. This consistent non-payment alone is indicative of consistent negative cash flow, and shows that the Debtor maintained negative cash flow irrespective of debt service.

14. With respect to the second prong of section 1112(b)(4)(A) of the Bankruptcy Code, courts have found that no reasonable likelihood of reorganization exists where the financial circumstances of a debtor lack any justification for continuing the efforts of the Chapter 11 case. *See*, *e.g.*, *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009) (finding that the reasonable likelihood of reorganization rests on whether the debtor's business prospects justify continuance of the reorganization effort) (*citing In re Rey*, 2006 Bankr. LEXIS 1803, 2006 WL 2457435, at *6 (Bankr. N.D. Ill. Aug. 21, 2006) *and In re Original IFPC Shareholders, Inc*., 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004)).

15. Here, the Debtor has shown no ability to present a confirmable plan of reorganization as the Debtor cannot maintain positive cash flow on a consistent basis irrespective of debt service. While consideration of this issue is admittedly early at this stage of the case, there is little sense in allowing this case to continue. The Debtor has not actually filed this case for the purpose of reorganizing and has shown no intent to reorganize. Facts such as the absence of a single substantive filing in the month since the Petition Date for an operating company are indicative of the time intent of this filing. This case represents nothing more than an attempt to delay American Chartered exercising its state court remedies under the Loans. Under the circumstances, it is not premature to consider the Debtor's lack of intent and ability to file a

confirmable plan. Indeed, courts in this Circuit have affirmed that dismissal may be appropriate at any time in a case. *See*, *e.g.*, *Matter of Woodbrook Assoc.*, 19 F.3d at 317 (rejecting debtor's claim that creditor was premature in seeking dismissal and finding that a Chapter 11 case can be dismissed at any time).

16. Section 1112(b)(4)(D) states as another specifically enumerated cause for conversion or dismissal, the "unauthorized use of cash collateral substantially harmful to one or more creditors." 11 U.S.C. § 1112(b)(4)(D). Courts have found that simply the unauthorized use of a secured creditor's cash collateral without knowledge or consent constitutes substantial harm under section 1112(b)(4)(D). *See*, *e.g.*, *In re Alston*, CIV.A. 13-1855, 2013 WL 6210249 (E.D. Pa. Nov. 27, 2013) (unauthorized use of cash collateral for postpetition payments unquestionably constitutes substantial harm to all relevant creditors); *Pena v. Manfredo*, 2013 WL 4817581 (E.D. Cal. Sept. 6, 2013) (unauthorized use of $16,000 over 42 days constituted substantial harm); *In re Lo'r Decks at Calico Jacks, LLC*, 2010 WL 1965894 (Bankr. E.D.N.C. May 14, 2010) (use of a secured creditor's cash collateral without permission or authority constitutes substantial harm as it depreciates the creditor's secured position); *In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio 2009) *aff'd sub nom. Fall v. Farmers & Merchants State Bank*, 2009 WL 974538 (N.D. Ohio Apr. 9, 2009) (unauthorized use of cash collateral with creditor's consent constitutes substantial harm). Other courts have found that any unauthorized use of cash collateral that does not directly benefit the estate constitutes substantial harm to the creditor whose cash collateral is being used. *See*, *e.g.*, *In re Visicon Shareholders Trust*, 478 B.R. 292, 314 (Bankr. S.D. Ohio 2012).

17. In the present case, it is inconceivable that an operating company has not used <u>any</u> cash in the past 30 days. Any unauthorized use of cash collateral by the Debtor, beyond being a

direct violation of section 362(b) of the Bankruptcy Code, constitutes substantial harm to American Chartered as its use diminishes American Chartered's collateral. American Chartered made the determination that it would be far more harmful to the bank to allow the Debtor to continue to operate than to seek immediate remedies against the Debtor's assets. For the Debtor to both file this case in bad faith simply to prevent American Chartered from exercising its state court remedies <u>and</u> to then use American Chartered's cash collateral without its knowledge or consent and without leave of Court certainly constitutes substantial harm. Further, to the extent cash collateral is being used for any purpose that is not directly beneficial to the estate and its creditors, such usage is by definition a substantial harm to American Chartered.

18. Nonetheless, <u>any</u> use of American Charetered's cash collateral constitutes substantial harm to American Chartered as it depletes American Chartered's secured position. As stated, the Debtor has been in a virtually perpetual overdraw position with American Chartered for at least 18 months. Any money spent by the Debtor depletes American Chartered's collateral position and circumstances such as those here are the very ones where consent or leave of court should be obtained for <u>any</u> cash collateral usage. Finally, American Chartered is not currently receiving any adequate protection of its interests and the Debtor has made no attempt to offer any adequate protection.

19. When determining whether to dismiss or convert a Chapter 11 case to Chapter 7; courts based the decision on "whichever is in the best interests of creditors and the estate…." 11 U.S.C. § 1112(b)(1). In the present case American Chartered is by far the Debtor's largest unsecured creditor and the only secured creditor. The Debtor's filings indicate that the Debtor only has 12 creditors. While American Chartered maintains claims in excess of $500,000 (the majority of which represents an unsecured claim), the Debtor's remaining 11 creditors appear to

have claims aggregating less than $10,000.  Consequently, American Chartered's view should weigh heavily in the evaluation of what is best for creditors and the estate.  While either dismissal or conversion is certainly more appropriate than allowing this case to continue as a Chapter 11 filing, American Chartered respectfully requests that this Court dismiss this case.  The Debtor simply has a handful of trade creditors and American Chartered, as the primary creditor, has already taken action prior to the Petition Date to effectuate its state court remedies.  Conversion to a Chapter 7 case will add unnecessary expense and delay over dismissal, but is still preferable to allowing this case to continue under Chapter 11.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, American Chartered Bank requests that the Court (i) dismiss this case or convert the case to a case under Chapter 7 of the Bankruptcy Code and (ii) grant such other and further relief as may be just and proper.

Dated this 2nd day of May, 2014.

                                            Respectfully submitted,

                                            AMERICAN CHARTERED BANK

                                            By:    /s/ Jordan M. Litwin
                                                                One of Its Attorneys

Jordan M. Litwin (ARDC No. 6287792)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{05665: 632: 01355366.DOC : }         9